IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ALONZO WILLIAMS,

    Defendant.

Case No. 3:23-cr-00086-SLG-KFR-1

**REPORT AND RECOMMENDATION RE MOTION TO SUPPRESS AND MOTION FOR EVIDENTIARY HEARING**

Before the Court are a Motion to Suppress and a Motion for Evidentiary Hearing filed by Defendant Alonzo Williams.[1] The government filed a Response in opposition to the Motion to Suppress and to the Motion for Evidentiary Hearing.[2]

The Court first recommends that the Motion for Evidentiary Hearing be **DENIED** because, although Defendant requests a hearing under *Franks v. Delaware*,[3] he has not identified any intentional or material misrepresentations or omissions in the testimony of the officer who applied for the search warrant at issue.[4] The Court next recommends that the Motion to Suppress be **DENIED** because the officer's testimony in support of the search warrant established probable cause that evidence of drug trafficking offenses would be found in Defendant's residence, the vehicle located within the curtilage of the residence, and the vehicle Defendant had just used to pick up a parcel containing drugs.

### I. BACKGROUND

On August 25, 2023, law enforcement agents monitoring the mail stream flagged a

---

[1] Docket 92; Docket 93.
[2] Docket 101.
[3] 438 U.S. 154 (1978).
[4] *See United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000) ("A defendant is entitled to a *Franks* hearing only if he makes a two-fold showing: intentional or reckless inclusion or omission, and materiality.").

package mailed to 10201 Jackpot Bay Circle in Anchorage, Alaska.[5] The agents deemed the parcel suspicious due to several factors known to be indicative of drug trafficking, including having been paid for in cash, shipment from a source state (California), and having a shipping label with sender and receiver names that were not associated with their assigned addresses.[6]

The agents intercepted the parcel and went to the Jackpot Bay Circle address that same day to conduct surveillance.[7] While there, the agents observed a silver Volkswagen Jetta pull into the property's driveway, though they did not see anybody exit the vehicle.[8] The agents ran a license plate check on the Jetta and determined that the vehicle was registered to Alphonso Williams.[9] The agents also learned that Alphonso Williams, who is Defendant's brother, had been arrested four days earlier at Anchorage International Airport for possession of approximately 100 suspected fentanyl pills.[10]

Based on this information, the agents applied for and received a federal search warrant for the parcel.[11] The agents executed the warrant and found over 16,000 grams of suspected fentanyl pills.[12] The agents then applied for and received a federal tracking warrant for the parcel, seeking authorization to place a GPS tracker on the parcel and to search the Jackpot Bay Circle residence if the parcel entered the residence.[13]

On August 29, 2023, law enforcement officers conducted a controlled delivery of the parcel to the Jackpot Bay Circle address.[14] About 15 to 20 minutes after the parcel was delivered to the front porch of the residence, the same Jetta that the agents had seen there several days earlier arrived at the address.[15] The officers observed Defendant—who was the sole occupant of the Jetta—exit the vehicle, pick up the package, put it in the back seat of the

---

[5] Docket 92-1 at 4.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 4, 6.
[11] *Id.* at 5.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 6.

vehicle, get back into the car, and drive off.[16] The officers followed Defendant to a trailer at 289 Birchwood Avenue, where Defendant stopped and got out the Jetta.[17] The officers contacted and detained Defendant immediately afterward.[18] Defendant told the officers that the trailer was his residence, a statement confirmed by the manager of the trailer park.[19]

Sergeant Robert Bressler of the Alaska State Troopers then applied for a telephonic warrant to search the premises at the Birchwood residence, a white Chevrolet Malibu parked immediately adjacent to the trailer,[20] and the Jetta for evidence of a state drug offense.[21] Sergeant Bressler recounted the information described above to the state magistrate judge and further testified that in the Malibu in plain view were duffel bags in the back seat and a backpack on the floorboard.[22] Sergeant Bressler also agreed with the magistrate judge's assessment that the parcel "was a drug delivery that [Defendant] believed he was bringing back to his residence."[23]

The magistrate judge found that there was probable cause to search the Birchwood residence, the Malibu, and the Jetta, and issued the requested warrant.[24] The officers executed the search warrant and found approximately 264 grams of suspected fentanyl pills, drug packaging and distribution materials, multiple cell phones, and several firearms.[25] Law enforcement arrested Defendant charged him via criminal complaint with conspiracy to distribute controlled substances and attempted possession of controlled substances, both in violation of 21 U.S.C. §§ 846 and 841(a)(1).[26] A grand jury subsequently returned an indictment charging Defendant with: (1) conspiracy to distribute controlled substances, in violation of 21

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at 6–7.
[20] Specifically, the Malibu was parked on the grass within a few feet of one side of the trailer and near a door leading into the trailer. Docket 92-2; Docket 92-3.
[21] Docket 92-1 at 1; *see also* AS 11.71.010–070.
[22] Docket 92-1 at 6.
[23] *Id.* at 8.
[24] *Id.* at 7.
[25] Docket 101 at 4; Docket 101-1 at 4.
[26] Docket 1.

R&R re Motion to Suppress
*United States v. Alonzo Williams*
3:23-cr-00086-SLG-KFR
3
Case 3:23-cr-00086-VMK-KFR   Document 118   Filed 09/16/24   Page 3 of 14

U.S.C. §§ 846 and 841(a)(1); (2) possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); and (3) possession of firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i).[27]

Defendant filed his Motion to Suppress and Motion for Hearing on August 5, 2024.[28] After receiving an extension of time, the government filed a Response in Opposition on August 19, 2024.[29]

## II. LEGAL STANDARDS

The Fourth Amendment prohibits unreasonable searches and seizures by the government.[30] Where a search warrant is required to satisfy this standard, the warrant "must be supported by an affidavit establishing probable cause."[31] Probable cause to issue a search warrant exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of circumstances."[32] "Neither certainty nor a preponderance of the evidence is required."[33] In determining whether probable cause exists, the issuing magistrate judge "may rely on the training and experience of affiant police officers."[34]

"In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit."[35] "[T]he duty of

---

[27] Docket 35 at 1–2.
[28] Dockets 92; Docket 93.
[29] Docket 101.
[30] U.S. Const. amend. IV.
[31] *Cameron v. Craig*, 713 F.3d 1012, 1018 (9th Cir. 2013) (internal quotation marks omitted).
[32] *United States v. Kvashuk*, 29 F.4th 1077, 1085 (9th Cir. 2022) (internal quotation marks omitted) (quoting *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021)); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (explaining that probable cause decision is based on "all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information"); *District of Columbia v. Wesby*, 538 U.S. 48, 57 (2018) ("Probable cause 'is not a high bar.'") (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014))).
[33] *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (internal citations and quotations omitted).
[34] *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002); *see also United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987) (stating that issuing magistrate judge may rely on conclusions of experienced officers regarding where evidence of a crime is likely to be found).
[35] *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985), amended, 769 F.2d 1410 (9th Cir. 1985).

a reviewing court is simply to ensure that the magistrate [judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed."[36] A reviewing court may not "flyspeck the [supporting testimony] through de novo review," and must give "great deference" to the issuing magistrate judge's decision.[37] The "resolution of doubtful or marginal cases . . . should largely be determined by the preference accorded to warrants."[38]

If a reviewing court determines that a search warrant lacked probable cause, evidence obtained during the warrant's execution "should generally be suppressed under the exclusionary rule."[39] Suppression is not an appropriate remedy, however, where an exception to the exclusionary rule applies.[40] One such exception is the "good faith" exception, which requires the government to show that an officer acted "in objectively reasonable reliance" on the search warrant.[41] The testimony in support of the warrant "'must establish at least a colorable argument for probable cause' for th[is] exception to apply."[42]

### III. DISCUSSION

Defendant moves to suppress all evidence obtained from the search of the Birchwood residence, the Malibu, and the Jetta.[43] He contends that the telephonic warrant authorizing these searches was invalid because Sergeant Bressler's supporting testimony did not establish probable cause to believe that evidence of a crime would be found at the residence or in either vehicle.[44] Defendant further suggests that no reasonable officer would have relied on the search warrant because it was so lacking in probable cause and that therefore the good faith exception to the exclusionary rule does not apply.[45] The Court addresses each of these

---

[36] *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980)).
[37] *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006); *see also United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) ("A magistrate judge's finding of probable cause is entitled to great deference.").
[38] *Kelley*, 482 F.3d at 1050–51 (internal quotation marks omitted) (quoting *Gates*, 462 U.S. at 237 n.10).
[39] *United States v. Underwood*, 725 F.3d 1076, 1084–85 (9th Cir. 2013).
[40] *See id.* at 1085.
[41] *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).
[42] *Crews*, 502 F.3d at 1136 (quoting *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006)).
[43] Docket 92 at 1.
[44] *Id.*
[45] *Id.*

R&R re Motion to Suppress
*United States v. Alonzo Williams*
3:23-cr-00086-SLG-KFR

5

arguments in turn.

### A. Sergeant Bressler's Testimony Established Probable Cause to Search the Birchwood Residence and the Vehicles for Evidence of Drug Trafficking.

Defendant argues that the search warrant lacked probable cause because Sergeant Bressler's supporting testimony did not demonstrate a reasonable nexus between the evidence sought and the Birchwood residence and two vehicles.[46] Defendant asserts that Sergeant Bressler's testimony showed only that "[Defendant] had driven to his home after picking up a parcel," and not that Defendant "knew anything about [the parcel's] contents," that the home "had anything to do with the investigation conducted up to that point," or that the Jetta was likely to contain evidence of criminal activity beyond the parcel's contents.[47] Defendant also suggests that the search warrant was tainted by law enforcement's initial glimpses inside the Malibu from within the curtilage of the Birchwood residence.[48]

The government responds that the search warrant was valid because Sergeant Bressler's testimony provided a sufficient basis to believe that Defendant's residence and the two vehicles were likely to contain evidence of drug trafficking offenses.[49] The government argues that the initial plain-view observations of the Malibu were not an unlawful search because law enforcement made these observations while permissibly "secur[ing] the residence pending [receipt] of the search warrant."[50] Moreover, the government maintains, the general warrant to search the premises of the Birchwood residence would have covered the Malibu even if the Malibu had not been specifically named in the warrant application.[51]

The Court has reviewed the four corners of the warrant application in this case and agrees with the government that Sergeant Bressler's testimony established probable cause for the search of the Birchwood residence and the Jetta. Sergeant Bressler detailed the basis for the agents' initial suspicion that the parcel contained drugs, including that the parcel had been

---

[46] *Id.* at 6–7.
[47] *Id.* at 7.
[48] *Id.* at 1.
[49] Docket 101 at 5, 8–9.
[50] *Id.* at 7.
[51] *Id.* at 6–7.

paid for in cash, had been shipped from a source state, and had a shipping label with sender and receiver names that were not associated with their assigned addresses.[52] Sergeant Bressler testified that the agents had confirmed this suspicion by searching the parcel pursuant to a separate warrant.[53] Sergeant Bressler further testified that the parcel contained over 16,000 grams of suspected fentanyl pills, an amount the issuing magistrate reasonably found to be consistent with distribution.[54] Sergeant Bressler additionally testified that, soon after the parcel was delivered to the Jackpot Bay address, Defendant arrived alone in the Jetta—the same car that the agents had seen at the address several days earlier—picked up the parcel, put it in the back seat of the vehicle, and drove to the Birchwood residence, where Defendant later said he lived.[55] This testimony demonstrated a fair probability under the totality of the circumstances that Defendant was involved in drug trafficking, and that drug trafficking evidence would be found in Defendant's residence and in the vehicle that Defendant used to transport the parcel originally containing 16,000 grams of fentanyl (and in which that parcel still sat).[56]

The lack of direct evidence that Defendant knew the parcel contained drugs does not defeat the magistrate judge's probable cause determination.[57] Sergeant Bressler's testimony

---

[52] Docket 92-1 at 4.

[53] *Id.* at 5.

[54] *Id.* at 6–7. In summarizing the basis for his probable cause determination, the magistrate judge incorrectly described the parcel as containing "60,000" grams of suspected fentanyl pills. *Id.* at 7. Sergeant Bressler quickly clarified that the correct amount was 16,000 grams, which the magistrate judge acknowledged. *Id.* at 8; *see also United States v. Magallon-Jimenez*, 219 F.3d 1109, 1114 (9th Cir. 2000) ("We have repeatedly inferred an intent to distribute from a large quantity of drugs[.]" (citing *United States v. Davila-Escovedo*, 36 F.3d 840, 843 (9th Cir. 1988))); *United States v. Savinovich*, 845 F.2d 834, 838 (9th Cir. 1988) (holding that jury could properly infer intent to distribute from defendant's possession of almost two kilograms of cocaine of 87% purity); *United States v. Concepcion-Guliam*, 62 F.4th 26, 34 (1st Cir. 2023) (concluding that jury could properly infer from quantity of drugs seized that fentanyl totaling approximately 1,800 grams was "not intended for personal use but, rather, for distribution"); Martin J. McMahon, Annotation, Sufficiency of Evidence that Possessor of Cocaine Had Intent to Distribute It, so as to Violate 21 U.S.C.A. § 841(A)(1), 80 A.L.R. Fed. 397 § II.3 (2024) (collecting cases).

[55] *Id.* at 5–6.

[56] *See United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live."); Docket 92 at 3; Docket 101 at 6.

[57] *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983) ("Probable cause does not require specific evidence of every element of an offense."); *United States v. Taylor*, 716 F.2d 701, 705–06 (9th Cir. 1983) (clarifying that testimony in support of search warrant "need not . . . preclude other innocent interpretations" for observed activities).

R&R re Motion to Suppress
*United States v. Alonzo Williams*
3:23-cr-00086-SLG-KFR-1
7
Case 3:23-cr-00086-VMK-KFR    Document 118    Filed 09/16/24    Page 7 of 14

established a reasonable nexus between Defendant and drug trafficking activity.[58] Having established Defendant's connection to distribution quantity of fentanyl, it was reasonable to search those locations in which evidence of that distribution might be located.

The Court further finds that the valid warrant to search the premises of the Birchwood residence encompassed the Malibu. The parties agree and the evidence supports that the Malibu was parked within the curtilage of the Birchwood residence.[59] "A search warrant for a residence may include all other buildings and other objects within the curtilage of that residence, even if not specifically referenced in the search warrant.[60] Therefore, once the officers obtained authorization to search the Birchwood residence, they were entitled to search the Malibu as well, even without separate express authorization.

As the information that Sergeant Bressler provided about the Malibu was not necessary to obtain authorization to search that vehicle or to find probable cause to search the residence, the Court need not resolve the parties' dispute over whether the officers observed the duffel bags and backpack inside the Malibu from a lawful vantage point. When some of the evidence in support of a search warrant is tainted, "[t]he warrant remains valid if, after excising the tainted evidence, the . . . 'remaining untainted evidence would provide a neutral magistrate

---

[58] *See Crews*, 502 F.3d at 1136–37 (stating that probable cause for search warrant requires "reasonable nexus between the crime or evidence and the location to be searched," meaning "[i]t need only be reasonable to seek the evidence at the location indicated in the affidavit" (citation omitted)); *Angulo-Lopez*, 791 F.2d at 1399 ("Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location.").

[59] Docket 92 at 8–9; Docket 101 at 6–7; Docket 92-2; Docket 92-3; *see also United States v. Dunn*, 480 U.S. 294, 301 (1987) (directing that questions of curtilage involve consideration of "[(1) the proximity of the area claimed to be curtilage to the home, [(2)] whether the area is included in an enclosure surrounding the home, [(3)] the nature of the uses to which the area is put, [and (4)] the steps taken by the resident to protect the area from observation by people passing by").

[60] *United States v. Cannon*, 264 F.3d 875, 881 (9th Cir. 2001); *accord United States v. Gorman*, 104 F.3d 272, 274–75 (9th Cir. 1996) ("The curtilage is simply an extension of the residence's living area, and we have previously held that such extensions become part of the residence for purposes of a search warrant. . . . If a search warrant specifying only the residence permits the search of 'closets, chests, drawers, and containers' therein where the object searched for might be found, so should it permit the search of similar receptacles located in the outdoor extension of the residence, i.e., the curtilage, such as the container in this case."); *cf. also United States v. Korte*, 918 F.3d 750, 755 (9th Cir. 2019) ("Generally, a lawful search of a fixed space or premise extends to its entire area, whether or not that requires opening a confined space[.]" (citing *United States v. Ross*, 456 U.S. 798, 821 (1982))).

[judge] with probable cause to issue a warrant.'"[61]

Here, even if the Court assumes the challenged observations were unlawful and excises that evidence from Sergeant Bressler's testimony accordingly, the remaining testimony still supported issuance of the warrant to search the Birchwood residence for evidence of drug trafficking. Sergeant Bressler's testimony pertaining to the Malibu consisted of nothing more than his description of the vehicle's location and the fact that it contained a duffel bag and backpack.[62] Removing this information from the warrant application—and therefore relying only on events that occurred up to and including Defendant's arrest—fails to undermine probable cause.[63]

In sum, the Court finds that the totality of the circumstances described in Sergeant Bressler's testimony—even without those portions pertaining to the Malibu—provided probable cause to search the Birchwood residence, the Jetta, and the Malibu for evidence of drug trafficking. The Court therefore recommends that the Motion to Suppress be denied.

### B. Even if the Search Warrant Lacked Probable Cause, the Good Faith Exception Would Apply.

Even if Sergeant Bressler's testimony did not establish probable cause to search the Birchwood residence or the two vehicles, the good faith exception to the exclusionary rule would preclude suppression as a remedy. The good faith exception applies "if an officer acts 'in objectively reasonable reliance' on the warrant."[64] The exception does not apply, conversely, "if the officers' conduct showed 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'"[65] "The central question is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate[] [judge's] authorization.'"[66]

---

[61] *United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014) (quoting *United States v. Reed*, 15 F.3d 928, 933 (9th Cir. 1994)).
[62] Docket 92-1 at 6.
[63] *See supra* notes 56–58 and accompanying text.
[64] *Underwood*, 725 F.3d at 1085 (quoting *Leon*, 468 U.S. at 922); *see also Luong*, 470 F.3d at 902 ("[T]he good faith test is an objective one.").
[65] *United States v. King*, 985 F.3d 702, 710 (9th Cir. 2021) (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).
[66] *Id.* (quoting *Leon*, 468 U.S. at 922 n.23).

In *United States v. Leon*, the Supreme Court identified four situations that *per se* fail to satisfy the good faith exception.[67] These situations are: (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge "wholly abandon[s] [their] judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."[68]

Defendant suggests that this third situation is present here.[69] Defendant argues that it was unreasonable to infer from Sergeant Bressler's testimony that Defendant knew the parcel contained drugs, and that there was no evidence connecting the Birchwood residence or the vehicles to drug trafficking.[70]

The government counters that Sergeant Bressler's testimony "connected [Defendant] to a distribution amount of fentanyl and was sufficient to allow the issuing magistrate judge to draw reasonable inferences that evidence of drug dealing was likely to be found in the vehicles and the residence where [Defendant] took the package."[71] The government asserts that this evidence was strong enough for the officers to properly rely on the magistrate judge's probable cause determination and that the good faith exception therefore applies.[72]

As the above discussion demonstrates, a reasonably well-trained officer would not have had reason to question the legality of the search warrant for evidence of drug trafficking. The same reasons supporting the Court's conclusion that there was probable cause for the search of the Birchwood residence and the two vehicles necessarily support the conclusion that

---

[67] 468 U.S. at 922–23.
[68] *Id.*
[69] Docket 92 at 10–12.
[70] *Id.* at 12.
[71] Docket 101 at 11.
[72] *Id.* at 11–12 (quoting *Leon*, 468 U.S. at 923).

Sergeant Bressler's testimony provided a "colorable argument for probable cause,"[73] and that the officers who executed the warrant were entitled to rely on the magistrate judge's issuance of that warrant.[74] Therefore, the Court finds that the good faith exception provides an alternative ground for denying the Motion to Suppress.

### C. Defendant Is Not Entitled to a *Franks* Hearing.

Finally, the Court addresses Defendant's request for a *Franks* hearing. Defendant contends that he is entitled to such a hearing because "he can make a substantial preliminary showing that the knowingly and/or recklessly false statements and omissions were material to the [issuing] magistrate judge's probable cause determination, and that excluding these false statements from the warrant application negates any finding of probable cause."[75] The government opposes Defendant's request for a *Franks* hearing on the ground that Defendant "has not met the basic threshold of identifying false statements accompanied by supporting reasons" showing the need for a hearing.[76]

To justify the need for a *Franks* hearing, a defendant "must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof."[77] In this case, neither of Defendant's two Motions clearly identifies any statements or omissions that he seeks to challenge. Nevertheless, based on the general tenor of Defendant's Motion to Suppress, the Court will assume that Defendant wishes to challenge Sergeant Bressler's purported failure to correct the issuing magistrate judge's "misunderstanding" that Defendant knew that the parcel contained drugs.[78]

"A defendant is entitled to a *Franks* hearing only if he makes a two-fold showing:

---

[73] *See Crews*, 502 F.3d at 1136 (internal quotation marks and citation omitted); *see also Underwood*, 725 F.3d at 1085 ("A colorable argument is made when 'thoughtful and competent judges' could disagree that probable cause does not exist." (quoting *United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988))).
[74] *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) ("[I]n the ordinary case, an officer cannot be expected to question the magistrate[] [judge's] probable-cause determination." (internal quotation marks omitted) (quoting *Leon*, 468 U.S. at 921)).
[75] Docket 93 at 1.
[76] Docket 101 at 14.
[77] *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008).
[78] *See* Docket 92 at 4.

intentional or reckless inclusion or omission, and materiality."[79] "A defendant satisfies this two-fold obligation by making 'a substantial preliminary showing that 'the affidavit contain[ed] intentionally or recklessly false statements, and . . . [that] the affidavit purged of its falsities would not be sufficient to support a finding of probable cause.'"[80]

Defendant has failed to meet his burden to satisfy each of these requirements. First, contrary to Defendant's assertions, it is not clear from the transcript of the search warrant application that the issuing magistrate judge mistakenly believed that Defendant knew that the parcel contained drugs. Defendant faults Sergeant Bressler for "le[aving] unchallenged" the magistrate judge's statement that "essentially [the parcel] was a drug delivery that [Defendant] believed he was bringing back to his residence."[81] This statement could reasonably be interpreted as meaning that Defendant believed he was bringing the parcel in question back to his residence, instead of meaning that Defendant believed he was bringing a "drug delivery" back to his residence. And, even if the magistrate judge's statement had the meaning Defendant ascribes to it, mere possession of a "substantial quantity of drugs" can support a reasonable inference of knowledge, even for purposes of proving that fact beyond a reasonable doubt at trial.[82] Defendant's possession of approximately 16,000 grams of fentanyl was sufficient to justify any inference by the magistrate judge that Defendant knew the parcel contained drugs.[83] Consequently, the Court finds that Defendant has not made a substantial preliminary showing that Sergeant Bressler deliberately or recklessly endorsed an incorrect version of the facts.[84]

---

[79] *Bennett*, 219 F.3d at 1124.
[80] *Id.* (alterations in original) (quoting *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995)).
[81] Docket 92-1 at 8.
[82] *See Davila-Escovedo*, 36 F.3d at 843 (9th Cir. 1994) ("[I]t is well-established in this Circuit that mere possession of a substantial quantity of drugs will support an inference of knowledge." (citing *United States v. Collins*, 764 F.2d 647, 652 (9th Cir. 1985); *United States v. Barbosa*, 906 F.2d 1366, 1368 (1990), *cert. denied*, 498 U.S. 961 (1990))).
[83] *Cf. Savinovich*, 845 F.2d at 838 (describing two kilograms of cocaine as "such a large quantity" and concluding that facts that defendant "carr[ied] a bag containing [that quantity] of cocaine from her home to her car, dr[ove] it to [another person's] house, and carried it inside" were sufficient to support jury's finding of knowing possession).
[84] Although "[c]lear proof is not required" in order to merit an evidentiary hearing, *see United States v.*

Second, Defendant has not shown that any such omission or misstatement by Sergeant Bressler regarding Defendant's knowledge of the contents of the parcel was material. As discussed above, the search warrant did not require and was not contingent on direct evidence that Defendant knew the parcel contained drugs.[85] The issuing magistrate judge reasonably inferred from other portions of Sergeant Bressler's testimony that there was a fair probability that drug trafficking evidence would be found in the specified locations.

The Court therefore recommends that the Motion for Evidentiary Hearing be denied.

### IV. CONCLUSION

Because Defendant has failed to show that he is entitled to a *Franks* hearing, the Court recommends that the Motion for Evidentiary Hearing at Docket 93 be **DENIED.** Because the disputed search warrant in this case was supported by testimony that established probable cause to search each specified location for evidence of drug trafficking, the Court recommends that the Motion to Suppress at Docket 92 also be **DENIED.**

DATED this 16th day of September, 2024, at Anchorage, Alaska.

/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

### NOTICE OF RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[86] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[87]

---

*Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982), "[a]llegations of negligence or innocent mistake are insufficient," *Franks*, 438 U.S. at 171.
[85] *See supra* notes 56–58 and accompanying text.
[86] 28 U.S.C. § 636(b)(1)(B).
[87] *Id.* § 636(b)(1)(C).

A party may file written objections to the magistrate judge's findings and recommendations within fourteen (14) days.[88] A response to the objections may be filed within seven (7) days after any objection is filed.[89] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[90]

---

[88] *Id.*; L.M.J.R. 7(a)(1).
[89] L.M.J.R. 7(a)(2).
[90] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).